EDWIN S. ZELL and FRANK I. MERCERET, trading as ZELL and MERCERET, *vs.* WILBUR F. CORKRAN.

*Assumpsit — Stock Brokers — Margins — Contract — Set-off — Damages.*

1. In a suit brought by stock brokers against a customer for a sum claimed to be due from certain stock transactions ; if, under the agreement controlling the transaction, the defendant was not to be liable for any loss beyond the amount of the cash he deposited from time to time in the hands of the plaintiffs, and the plaintiffs assumed all the risks beyond such margins, the plaintiffs cannot recover.

2. If under such agreement the stocks were to be bought and sold for the defendant, just as if the brokers were dealing for themselves and upon their recommendation and solicitation, and the defendant was not to suffer any loss in such stock transactions, the plaintiffs cannot recover.

3. If under such agreement the defendant had the right, at any time when his margins, coupled with the market value of the stock held by the plaintiffs, were sufficient to save him from loss, to order the sale of the stocks then on hand ; that such a condition did exist at a certain time, and on that day the defendant ordered the plaintiffs to sell the stocks, which the plaintiffs failed to comply with, and from such failure the defendant suffered damage equal to, or in excess of, the balance claimed by the plaintiffs, they cannot recover.

4. Measure of damages.

(*February 27, 1905.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Armon D. Chaytor, Jr.,* for plaintiffs.

*W. W. Knowles* for defendant.

Superior Court, New Castle County, February Term, 1905.

ACTION OF ASSUMPSIT (No. 9, September Term, 1904).

The facts appear in the charge of the Court.

LORE, C. J., charging the jury :

Gentlemen of the jury :—Zell and Merceret, the plaintiffs, seek

to recover in this suit the sum of $3385.62, with interest thereon from April 24, 1904, which they claim is due to them from the defendant, Wilbur F. Corkran.

The plaintiffs claim that they were brokers doing business in the City of Baltimore, State of Maryland; that as such brokers they bought and sold, at the instance and for and on account of the defendant, various stocks, to the amount of many thousand dollars as set forth in the bill of particulars. The first purchase of stock was made December 26, 1900, and the last June 19, 1901. The first sale of stocks was made February 13, 1901, and the last sale April 15, 1903. That by the custom of brokers and under the agreement with Corkran, he was to deposit in cash in the hands of the plaintiffs, a certain percentage of the price of the stock as margin, and was to keep that margin within safe limits when notified and called for, and that the plaintiffs were to provide the balance of the purchase money, holding or pledging the stock as security therefor. At any time, upon payment of the whole purchase money, by the defendant, the stocks were to be transferred and delivered by the plaintiffs to the defendant. That so long as the margins deposited by Corkran were kept within safe limits under the fluctuations of the market, the stocks were held subject to the defendant's order; but when not so within safe limits, the plaintiffs had the right to control and dispose of the stocks on hand for their own protection. That Corkran was to receive all the profits of the stock transactions after the payment of the commissions of the brokers, advances made by them, taxes, interest and other legitimate charges, and was to bear any loss that might ensue. The plaintiffs further claim that Corkran failed to keep his margins at a safe limit on demand, as the stock shrunk in value; that thereupon the plaintiffs, to prevent further loss, sold all the stocks remaining on hand and upon settlement find that there is due them in the said transaction, from the said defendant, the balance above claimed.

The defendant does not deny that stocks of the kind and at the prices claimed were actually bought and sold by the plaintiffs in the transactions between them, but does deny that he is liable for

the balance claimed to be due to the plaintiffs, or any part thereof. He presents three grounds of defense:

*First.* He claims that under the agreement controlling the transaction, he was not to be liable for any loss beyond the amount of the cash margins which he deposited from time to time in the hands of the plaintiffs as brokers, and that the plaintiffs assumed all risks beyond such margins.

The plaintiffs deny that there was any such limitation of the liability of the defendant.

If you should find from the evidence that his liability for losses was so limited to such margins by the agreement, your verdict should be for the defendant.

*Second.* The defendant claims that the stocks were to be bought and sold for him just as if the plaintiffs were dealing for themselves, largely upon their recommendation and solicitation; that plaintiffs assured and agreed with him that he should not suffer any loss in such stock transactions.

If you find from the evidence that there was such an agreement, your verdict should be for the defendant.

The plaintiffs, however, deny that there was any such agreement or understanding.

*Third.* The defendant claims further, that at any time when his margins, coupled with the market value of the stocks held by plaintiffs, were sufficient to save them from loss, that he had the right to order the sale of the stocks then on hand. He further claims that such a condition existed on the tenth day of December, 1901, as shown by the plaintiffs' statement. That on that day, he ordered the plaintiffs to sell the stocks on hand, which the plaintiffs failed to comply with; that from such failure to sell the defendant suffered damages in amount equal to or in excess of the balance claimed by the plaintiffs in this suit. This damage he sets up as a counterclaim to the demand of the plaintiffs by way of recoupment.

If you should find that on the tenth day of December, 1901, the condition of the defendant's account gave him the right to order such sale; that on that day he did order plaintiffs to sell the stocks that the plaintiffs failed to comply therewith, and that from such failure to sell the defendant was damaged, such damage may lawfully be considered by you to defeat the claim of the plaintiffs. If the damage so found shall be equal to or in excess of the plaintiffs' demand it would cancel the entire claim; if less than the amount claimed, it would be a credit thereon.

To sustain this defense, however, you should be satisfied from the evidence, that the defendant had the right to order the sale of the stock; that he did so order; that the plaintiffs disregarded that order, and that the damage claimed resulted therefrom.

The plaintiffs deny that any such order was ever given.

Even if such an order was given and not complied with by the plaintiffs, such failure to comply might be waived on the part of the defendant. Should you find from the evidence that the defendant subsequently, in correspondence and dealing with respect to the transaction, so acted as to show that he treated the plaintiffs' claim as a still subsisting indebtedness against him, this would amount to a waiver of the failure of the plaintiffs to sell as ordered, and a ratification of their conduct in so failing to sell.

There seem to be no contested questions of law involved in this suit. It is essentially a question of fact, to be determined by you under the instructions we have just given you. After a careful consideration of all the evidence, it is for you to say what, if any, amount is due from the defendant to the plaintiffs.

Verdict for defendant.